COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO. 14-6740 C

COPY

| | |
|---|---|
| CATHERINE DOE, individually and as parent and next friend of her minor daughter, JANE DOE, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| TOWN OF HOPKINTON; HOPKINTON PUBLIC SCHOOLS; WILLIAM S. HOWARD, in his individual and official capacities; WILLIAM B. LYNCH, in his individual and official capacities; JOHN E. PHELAN, JR., in his individual and official capacities; WILLIAM MEEHAN, in his individual and official capacities; and JASON WEBSTER, in his individual and official capacities, | ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

FILED
IN THE OFFICE OF THE
CLERK OF COURT
FOR THE ... SEX

JUL 29 2014

RECEIVED
JUL 3 1 2014
BY:

## COMPLAINT AND JURY DEMAND

## INTRODUCTION

1.    Plaintiff, Catherine Doe, individually and as parent and next friend of her minor

daughter, Jane Doe, brings this action for injunctive relief and to recover damages caused by

Defendants' wrongful acts and omissions in connection with former Hopkinton Public Schools

teacher William S. Howard's sexual abuse, assault, molestation, and harassment of Jane Doe

during the 2009-2010 academic year.

2.    Jane Doe suffered personal injuries (including physical and psychological

injuries, pain and suffering, emotional distress, impaired earning capacity, medical expenses, and

other damages) as a result of Defendants' improper conduct. Catherine Doe also suffered a loss

of her daughter's consortium, a loss of income, and other damages as a result of defendants'
improper conduct.

## PARTIES

3.      Plaintiff Catherine Doe and her minor daughter Jane Doe reside in the Town of
Hopkinton, Massachusetts.

4.      Defendant the Town of Hopkinton is a municipal body public duly incorporated
under the laws of the Commonwealth of Massachusetts.  The Town's address is Town of
Hopkinton, Hopkinton Town Hall, c/o Norman Khumalo, Town Manager, 18 Main Street,
Hopkinton, Massachusetts 01748.

5.      Defendant Hopkinton Public Schools is the School District of the Town of
Hopkinton located at 89 Hayden Rowe Street, Hopkinton, Massachusetts 01748.

6.      On information and belief, Defendant William S. Howard is an individual
residing at 34 Meeting House Lane, Apartment 204, Stow, Massachusetts 01775.  He is sued in
his individual and official capacities.

7.      On information and belief, Defendant Dr. William B. Lynch is an individual
residing at 6 Carolyn Drive, Westborough, Massachusetts 01581.  He is sued in his individual
and official capacities.

8.      On information and belief, Defendant Dr. John E. Phelan, Jr. is an individual
residing at 17 Carriage Hill Road, Hopkinton, Massachusetts 01748.  He is sued in his individual
and official capacities.

9.      On information and belief, Defendant William Meehan is an individual residing in
Massachusetts and employed at Hopkinton Middle School, 88 Hayden Rowe Street, Hopkinton,
Massachusetts 01748.  He is sued in his individual and official capacities.

10.    On information and belief, Defendant Jason Webster is an individual residing at 154 Woodridge Road, Marlborough, Massachusetts 01752. He is sued in his individual and official capacities.

## JURISDICTION AND VENUE

11.    This Court has personal jurisdiction over the Town of Hopkinton under G.L. c. 223A, § 2, because the Town is a municipal body public duly incorporated under the laws of the Commonwealth of Massachusetts.

12.    This Court has personal jurisdiction over Hopkinton Public Schools as a school district of the Town of Hopkinton.

13.    This Court has personal jurisdiction over Defendants Howard, Lynch, Phelan, Meehan, and Webster under G.L. c. 223A, §§ 2 and 3, because each individual is domiciled in Massachusetts or caused tortious injury by an act or omission in Massachusetts.

14.    Venue is proper in Middlesex County under G.L. c. 258, § 3, because Plaintiff resides in that county and the Town of Hopkinton is situated in that county.

## FACTS

15.    Hopkinton Middle School is part of the Hopkinton Public Schools.

16.    At all times relevant to the allegations herein, the Town employed Howard as a sixth-grade teacher at the Hopkinton Middle School.

17.    At all times relevant to the allegations herein, Dr. Phelan was employed by the Town as the Superintendent of the Hopkinton Public Schools.

18.    At all times relevant to the allegations herein, Dr. Lynch was employed by the Town as the Principal of Hopkinton Middle School.

3

19.     At all times relevant to the allegations herein, Meehan was (and still is) employed by the Town as a Guidance Counselor at Hopkinton Middle School.

20.     At all times relevant to the allegations herein, Webster was employed by the Town as the Assistant Principal of Hopkinton Middle School.

21.     Jane Doe was a student at the Hopkinton Middle School from 2009 to 2012.

22.     Jane was in the sixth grade during the 2009 to 2010 academic year.

23.     Howard was Jane's science teacher during the 2009 to 2010 academic year.

24.     Even before attending Howard's class, Jane was aware of Howard's reputation at the school as "creepy" and a "pervert."

25.     Jane learned of Howard's reputation from older students with whom Jane trained as a gymnast.

26.     There were also allegations in the Hopkinton school community that Howard had acted inappropriately toward young girls in the past.

27.     Shortly after the start of the school year, Howard began engaging in sexually inappropriate behavior with Jane and other female students in Jane's science class.

28.     On a daily basis, Howard massaged Jane's shoulders and those of other female students in the classroom during group work.

29.     About every few days, Howard massaged from Jane's shoulders all the way down to the top of her buttocks.

30.     On one occasion, Howard touched Jane's buttocks as she was leaving his classroom.

31.     Howard's behavior made Jane feel extremely uncomfortable.

4

32.   Jane hesitated to say anything to her parents or the school's administration because she felt so uncomfortable and because she feared reprisal from Howard.

33.   Jane was frightened of Howard because when he was angry he became extremely agitated and screamed at the students.

34.   Howard regularly used profanity during class, which contributed to his intimidating presence.

35.   Howard's behavior frightened Jane greatly and made her afraid to tell anyone or do anything about his sexually inappropriate conduct.

36.   Throughout the 2009-2010 academic year, the female students in Jane's class increasingly referred to Howard as "creepy."

37.   Jane learned that Howard had touched the buttocks of some of the other female students in her class.

38.   Howard favored a few girls in particular and had nicknames for some of them, including Jane.

39.   Howard consistently paid more attention to and favored the female students.

40.   In November or December 2009, one of Jane's friends, who was also one of Howard's favorites, told Jane that Howard put his hand down the back of her pants, underneath her underwear, and touched her buttocks.

41.   Howard was also known to take a lot of photographs, almost exclusively of female students.

42.   Howard would sometimes post a few of the photographs on a board outside his classroom or on a school website.

43.     In October 2009, the sixth-grade class at Hopkinton Middle School went on an overnight trip to Nature's Classroom in Connecticut.

44.     Jane went on this trip.

45.     During free time one afternoon, Jane and a friend were doing gymnastics outdoors.

46.     Howard saw this, approached the girls, and began taking photographs of them doing gymnastics.

47.     One night, just before the evening group activity, Howard entered the all-girls cabin where Jane was staying.

48.     As Howard entered the cabin, another girl told Howard not to come in because one of Jane's friends—and a favorite of Howard's—was changing.

49.     Howard told the girls that he would not look but he stood in the doorway holding his camera.

50.     After Jane's friend finished changing, Howard began taking photographs of the girls' cabin.

51.     In addition to Nature's Classroom, Howard ran or aided with other school-run and sponsored programs or activities such as the IGNITE leadership program.

52.     Howard also supervised students waiting to participate in after-school activities.

53.     These extracurricular assignments put Howard in direct contact with Hopkinton Middle School students even outside the classroom.

54.     On information and belief, during the 2009-2010 winter school play, "A Christmas Carol," at least two supervising adults saw Howard backstage taking photographs of young girls in various stages of undress while they were changing costumes.

55.     On information and belief, the two supervising adults were Drama teacher
Hallyann Gifford and a parent of one of the students.

56.     On information and belief, former Hopkinton Middle School Assistant Principal
Jason Webster was also present while Howard photographed the girls while they were changing
backstage.

57.     In December 2009, Howard conducted a "human density" experiment in his
classroom.

58.     Howard asked two girls and two boys to participate by changing into bathing suits
and submerging themselves in a trash can filled with water and then measuring the water
displacement.

59.     Howard directed the girls to change in the back storage room of his classroom,
even though they asked to change in the bathroom.

60.     The boys, however, were permitted to change in the bathroom.

61.     Howard took photographs of the girls when they emerged from the trash can in
their wet bathing suits.

62.     Though Jane was not in class the day of the "human density" experiment, she
learned about the incident from her friends who were in class.

63.     Jane and the other students suspected that Howard had a hidden camera in the
back storage room of his classroom.

64.     In April 2010, guidance counselors and school administrators began talking
privately with several female students in Jane's class about Howard's inappropriate behavior.

65.     Jane was the second or third student asked to speak with guidance counselors and
administrators.

66.    Before the meeting, Jane had heard from other students that Howard left the school in tears earlier in the day.

67.    Jane met with a Hopkinton High School guidance counselor.

68.    The guidance counselor asked Jane if Howard did anything inappropriate.

69.    Jane told the guidance counselor about the disturbing shoulder and lower back massages, and the time when Howard touched Jane's buttocks.

70.    After about an hour Jane was allowed to return to class.

71.    The guidance counselor did not tell Jane what would happen to Howard, but he was not in Jane's science class later that day.

72.    Principal William B. Lynch called Catherine to inform her that Jane had been called out of class and interviewed by a female guidance counselor, but he stated that no more details could be given and Catherine would have to talk to her daughter about the substance of the conversation when she got home from school over four hours later.

73.    No one at the school sought consent from Jane's parents for Jane to be interviewed.

74.    Approximately one month later, Jane was asked to meet with Hopkinton Public Schools Assistant Superintendent Dr. Mary Colombo.

75.    Catherine was present for this second interview.

76.    During that interview, Jane was again asked about her interactions with Howard and was also asked to recreate exactly how Howard touched her and what she did when he touched her.

77.    Jane complied with these requests.

8

78.   Jane and Catherine were told several times after the meeting that Jane would be offered counseling by a female counselor, but no counseling was ever provided.

79.   Jane remained anxious about whether Howard would return to class.

80.   Jane was afraid of the potential consequences if Howard returned after learning what Jane had said about him in the meetings with the guidance counselor and Assistant Superintendent.

81.   It was about a month before Jane learned that Howard would not be returning during the 2009-2010 academic year.

82.   However, the school's administrators, including Superintendent John E. Phelan and Principal William B. Lynch and their respective staffs, did not inform students or parents whether Howard would be returning the following year and did not disclose the true reason for Howard's absence.

83.   Throughout the summer, Howard's name remained on the Hopkinton Middle School's website as a staff member.

84.   Two days before school started, Jane's mother, Catherine Doe, had to call the school to find out whether Howard would be returning the next year.

85.   Dr. Colombo told Catherine that Howard would not be back but did not elaborate any further.

86.   Until that time, Jane was anxiety-ridden and often panicked about what Howard's return would mean for her.

87.   Even after that time, however, the Town and the Hopkinton Public Schools failed to inform the students or their parents about the allegations of Howard's inappropriate behavior or the reason for his absence from the school.

9

88.     Only recently did the Hopkinton Public Schools confirm and admit that Howard engaged in a pattern of sexual abuse of female students at Hopkinton Middle School, including Jane Doe.

89.     On November 7, 2013, Cathy MacLeod, Superintendent of the Hopkinton Public Schools, wrote to Jane's parents affirmatively stating that the information Jane provided during the investigation of Howard "was corroborated by other witnesses."

90.     Dr. MacLeod explained that the investigation "revealed a pattern of inappropriate behavior that violated a number of Hopkinton Public Schools policies, as well as demonstrating conduct unbecoming a teacher, unprofessional conduct, inappropriate conduct and conduct contrary to the best interest of a student or students."

91.     Finally, Dr. MacLeod stated that the report generated from the investigation recommended that Howard be dismissed from employment, but he resigned before being dismissed.

92.     On information and belief, officials and other employees of the Hopkinton Public Schools had actual knowledge of Howard's inappropriate conduct long before the spring of 2010 but remained deliberately indifferent to Howard's sexual harassment of young female students, and therefore failed to respond appropriately.

93.     Indeed, officials and employees of the Hopkinton Public Schools had received prior complaints regarding Howard's conduct with students.

94.     These officials and employees include, but are not limited to, Dr. John E. Phelan, Superintendent of the Hopkinton Public Schools at the time; Dr. William B. Lynch, Principal of Hopkinton Middle School at the time; William Meehan, a guidance counselor at Hopkinton

Middle School at the time; and Jason Webster, Assistant Principal of Hopkinton Middle School at the time.

95.     On information and belief, Dr. Phelan, Dr. Lynch, Mr. Meehan, and Mr. Webster, among others, knew that Howard was engaging in inappropriate sexual acts with female students, including touching female students, long before the spring of 2010, but remained deliberately indifferent to Howard's sexual harassment, and therefore did not respond appropriately.

96.     For example, in April 2008, a female student reported to a school adjustment counselor that Howard was "creeping out" her and other students by touching their shoulders.

97.     During the 2008-2009 school year, Mr. Meehan heard that Howard was making female students uncomfortable by touching them.

98.     Meehan told Howard to be careful not to touch female students at all.

99.     Howard responded that he "would try not to."

100.    In April 2009, a female student told then Assistant Principal Webster that Howard had picked up her necklace (which was between her shirt and her jacket), said it was a nice necklace, and put it back.

101.    The student also told Webster that Howard held her hands when he spoke to her and that the incident made her very uncomfortable.

102.    Webster "verbally counseled" Howard, who later apologized to the student.

103.    In the fall of 2009, several students told the Hopkinton Middle School Drama teacher that Howard was taking photographs of them while they were backstage getting ready for a performance.

11

104. In April 2010, a staff member at a Hopkinton church reported to the Department of Children and Families (DCF) inappropriate acts by Howard involving a female student at Hopkinton Middle School.

105. After that, at least ten other reports were made to DCF about inappropriate acts by Howard against other female students at Hopkinton Middle School.

106. On information and belief, well before and up to April 2010, Hopkinton Public School administrators, teachers, guidance counselors, staff, and the Hopkinton Resource Police Officers assigned to the Hopkinton Middle School were all aware that Howard had engaged in, had the reputation as one who had the propensity to engage in, and likely did engage in inappropriate sexual contact with young female students at Hopkinton Middle School.

107. On information and belief, in the years before April 2010, officials and other employees of the Hopkinton Public Schools received numerous complaints revealing that Howard had engaged in inappropriate conduct, both sexual and non-sexual, against female students at Hopkinton Middle School.

108. On information and belief, students reported that Howard favored girls generally and a few in particular to whom he paid extra attention; rubbed girls' shoulders, sometimes down to their lower backs; smacked girls' buttocks; brushed up against girls' chests; swore in front of students; and took inappropriate photographs of students.

109. Accordingly, at all relevant times, the Town of Hopkinton and Hopkinton Public Schools were aware (through officials and other employees of Hopkinton Public Schools) of Howard's propensity to act inappropriately with minor female students.

110.   At all relevant times, the Town of Hopkinton and Hopkinton Public Schools were aware (through officials and other employees of Hopkinton Public Schools) of Howard's sexually harassing behavior but failed to intervene until April 2010.

111.   Howard's sexually harassing behavior became accepted by the administrators and staff of the Hopkinton Public Schools as condoned and customary practice.

112.   At all relevant times, the Hopkinton Public Schools maintained, and continues to maintain, a written Sexual Harassment policy.

113.   The Sexual Harassment policy expressly prohibits, among other things, sexual harassment that has the purpose or effect of unreasonably interfering with an individual's work or educational performance or creating an intimidating, hostile, or offensive working or educational environment.

114.   At all relevant times, the Hopkinton Public Schools maintained, and continues to maintain, a written policy regarding Mandated Reporting of Suspected Child Abuse and Neglect.

115.   The Mandated Reporting of Suspected Child Abuse and Neglect policy expressly affirms the Hopkinton Public Schools' responsibility to provide for the safety and well-being of students.

116.   The Mandated Reporting of Suspected Child Abuse and Neglect policy also acknowledges the responsibility of Hopkinton Public Schools employees to comply with the Massachusetts Mandatory Child Abuse and Neglect Reporting Statute, G.L. c. 119, § 51A.

117.   The policy also recognizes that, as mandated reports under G.L. c. 119, § 51A, any staff member who in his or her professional capacity has reasonable cause to believe that a child under the age of eighteen years is suffering from the effects of any form of child abuse and

13

neglect, that the staff member will report his or her concerns to the building principal for consideration of reporting to the Department of Children and Families.

118.    The policy also provides that each school principal shall ensure that all school staff is fully informed of responsibilities to report suspected child abuse and neglect and must ensure that reporting procedures are followed in all cases.

119.    The policy also provides that the superintendent shall ensure that annual training is provided to principals and administrators in regard to compliance issues and best practices in regard to the reporting of child abuse and neglect.

120.    In spite of these written policies, on information and belief, it was the actual custom, practice, and usage, such that it became the *de facto* policy of the Hopkinton Public Schools, not to investigate or report instances of suspected child abuse, including but not limited to, sexually harassing behavior of teachers, administrators, or staff.

121.    On information and belief, it was also the actual custom, practice, and usage, such that it became the *de facto* policy of the Hopkinton Public Schools, not to discipline teachers, administrators, or staff for sexually harassing behavior against students or other teachers, administrators, or staff.

122.    On information and belief, it was also the actual custom, practice, and usage, such that it became the *de facto* policy of the Hopkinton Public Schools, not to discipline teachers, administrators, or staff for violations of, or otherwise ensure compliance with, official policies of the Hopkinton Public Schools.

123.    As a direct and proximate result of the unlawful sexual abuse, assault, molestation, and harassment by Howard and the actions and omissions of the other Defendants,

Jane Doe and Catherine Doe have suffered, and will continue to suffer, substantial and potentially irreparable damages.

124.    Jane Doe has suffered personal injuries (including physical and psychological injuries, pain and suffering, emotional distress, impaired earning capacity, medical expenses, and other damages) as a result of Howard's sexual abuse, assault, molestation, and harassment, and the actions and omissions of the other Defendants.

125.    Jane has suffered from severe anxiety and depression, and engaged in acts of self-injury such as cutting.

126.    Jane has undergone significant counseling and a doctor-prescribed medication regimen.

127.    Jane's relationships with her parents, siblings, teachers, friends, and peers were negatively impacted.

128.    There are other specific facts related to Jane's damages, but including them in this Complaint would reveal her identity.

129.    Jane's mother, Catherine Doe, has lost her daughter's consortium and suffered a loss of income and other damages as a result of Defendants' wrongful conduct.

130.    Plaintiff brings this action within three years of Jane and Catherine Doe's discovering their injuries and that the injuries were caused by the Defendants.

**COUNT I**
**Assault and Battery**
**(Against Howard)**

131.    Plaintiff repeats the allegations set forth above as if fully contained herein.

132.    Based upon his conduct as set forth above, Defendant Howard repeatedly and on numerous occasions engaged in sexual acts upon Jane, thereby committing assault and battery.

15

133.    Howard intended to cause harmful or offensive contact with Jane, or an imminent apprehension of such contact, Jane was thereby put in imminent apprehension of such contact, and Howard made such harmful or offensive contact with Jane.

134.    Jane has suffered, and continues to suffer, personal injuries (including physical and psychological injuries, pain and suffering, emotional distress, impaired earning capacity, medical expenses, and other damages) as a direct and proximate result of Howard's conduct.

## COUNT II
### Unfair Educational Practice – Sexual Harassment
### In Violation of G.L. c. 214, § 1C and G.L. c. 151C, § 2(g)
### (Against Town of Hopkinton, Hopkinton Public Schools, and Howard)

135.    Plaintiff repeats the allegations set forth above as if fully contained herein.

136.    Plaintiff has fully complied with all requirements to exhaust administrative remedies by filing a charge of discrimination with the Massachusetts Commission Against Discrimination (MCAD) and waiting more than ninety days after filing the charge to remove the claim from the MCAD and file this action in the Superior Court.

137.    Jane Doe has the right under G.L. c. 214, § 1C, to be free from sexual harassment as defined in G.L. c. 151C.

138.    G.L. c. 151C, § 2(g) makes it an unfair educational practice for an educational institution to sexually harass students in any program or course of study in any educational institution.

139.    The Hopkinton Public Schools is an "educational institution" within the meaning of G.L. c. 151, § 1(b) because it is an institution for instruction or training that accepts applications for admission from the public generally and that is not in its nature distinctly private.

140.    The Hopkinton Middle School is also an "educational institution" within the meaning of G.L. c. 151, § 1(b) because it is an institution for instruction or training that accepts applications for admission from the public generally and that is not in its nature distinctly private.

141.    Defendants the Town of Hopkinton, Hopkinton Public Schools, and Howard engaged in an unfair educational practice by sexually harassing Jane Doe within the meaning of G.L. c. 151C, § 1(e), while she was a student at the Hopkinton Middle School, which is part of the Hopkinton Public Schools.

142.    Jane Doe was subjected to Howard's sexual advances and other verbal and physical conduct of a sexual nature such that submission to or rejection of Howard's advances and conduct was made either explicitly or implicitly a basis for his evaluation of Jane Doe's academic achievement.

143.    Jane Doe was also subjected to Howard's sexual advances and other verbal and physical conduct of a sexual nature such that the advances and conduct had the purpose or effect of unreasonably interfering with Jane Doe's education by creating an intimidating, hostile, humiliating, and sexually offensive educational environment.

144.    As alleged in detail above, officials of the Town and Hopkinton Public Schools with authority to institute corrective measures on the district's behalf (e.g., Dr. Phelan, Dr. Lynch, Mr. Meehan, and Mr. Webster, among others) had actual knowledge of Howard's pattern of sexually harassing and abusing young female students at Hopkinton Middle School, but ignored this conduct, acted with a reckless disregard for Howard's conduct, and/or acted deliberately indifferent to Howard's sexual harassment and therefore failed to adequately respond to or remedy the situation.

17

145.    As a direct and proximate result of the Town's, Hopkinton Public Schools', and Howard's violations of G.L. c. 214, § 1C and G.L. c. 151C, § 2(g), and as alleged in detail above, Jane Doe has suffered personal injuries (including physical and psychological injuries, pain and suffering, emotional distress, impaired earning capacity, medical expenses, and other damages).

### COUNT III
### Violation of 20 U.S.C. § 1681(a) (Title IX)
### (Against Town of Hopkinton and Hopkinton Public Schools)

146.    Plaintiff repeats the allegations set forth above as if fully contained herein.

147.    The Town of Hopkinton operates the Hopkinton Public Schools, which is an educational program that receives Federal financial assistance.

148.    The Town and Hopkinton Public Schools are thus subject to the requirements of 20 U.S.C. § 1681(a) (Title IX).

149.    The Town and Hopkinton Public Schools subjected Jane Doe to discrimination on the basis of sex in violation of Title IX.

150.    As alleged in detail above, officials of the Town and Hopkinton Public Schools with authority to institute corrective measures on the district's behalf (e.g., Dr. Phelan, Dr. Lynch, Mr. Meehan, and Mr. Webster, among others) had actual knowledge of Howard's pattern of sexually harassing and abusing young female students at Hopkinton Middle School, but ignored this conduct, acted with a reckless disregard for Howard's conduct, and/or acted deliberately indifferent to Howard's sexual harassment and therefore failed to adequately respond to or remedy the situation.

151.    As a direct and proximate result of the Town's and Hopkinton Public Schools' violations of Title IX, and as alleged in detail above, Jane Doe has suffered personal injuries

(including physical and psychological injuries, pain and suffering, emotional distress, impaired earning capacity, medical expenses, and other damages).

## COUNT IV
### Violation of 42 U.S.C. § 1983
### (Against All Defendants in their Individual and Official Capacities)

152.   Plaintiff repeats the allegations set forth above as if fully contained herein.

153.   At all relevant times, all Defendants were acting under color of State law.

154.   Defendants subjected Jane Doe, or caused her to be subjected, to the deprivation of rights, privileges, and immunities secured by the Constitution and laws of the United States.

155.   Defendants had a duty to provide and ensure an educational environment for Jane free from sexual advances, sexually abusive and harassing behavior, intimidating and aggressive sexual behavior, or other verbal or physical conduct of a sexual nature, and to enforce the laws, regulations, and rules necessary to protect Jane and other female students from acts of sexual abuse and harassment.

156.   Howard's unlawful sexual abuse, assault, molestation, and harassment of Jane, including touching Jane's buttocks and massaging her shoulders down to the top of her buttocks, violated Jane's substantive due process rights to bodily integrity and equal protection under the Fourth, Fifth, Ninth, and Fourteenth Amendments of the Constitution of the United States.

157.   Howard's conduct also deprived Jane of the right to be free from discrimination on the basis of sex, including sexual harassment, secured by Title IX, as alleged above.

158.   Officials of the Hopkinton Public Schools, including but not limited to Dr. Phelan, Dr. Lynch, Mr. Meehan, and Mr. Webster, knew or should have known that Howard was harassing students based on numerous reports and personal observation.

159.    Officials of the Hopkinton Public Schools, including but not limited to Dr. Phelan, Dr. Lynch, Mr. Meehan, and Mr. Webster, failed to properly investigate, report, take disciplinary action, or otherwise take any action when they received reports of Howard's constitutional and Title XI violations, despite school policies and Federal and State laws that required action.

160.    These actions or omissions constituted supervisory encouragement, condoning, and acquiescence as well as gross negligence amounting to deliberate indifference to the students' civil rights.

161.    The Town of Hopkinton and the Hopkinton Public Schools failed to enforce Federal and State law and school policy and failed to properly train, supervise, and discipline school officials and employees, including Howard.

162.    The Town and Hopkinton Public Schools were aware that the policies governing Sexual Harassment and Mandated Reporting of Suspected Child Abuse and Neglect were not being followed despite numerous complaints and copious information regarding Howard's sexual misconduct.

163.    The Town's and Hopkinton Public Schools' failure to take action in the face of this egregious and flagrant disregard for the civil rights and safety of students among their employees, in violation of applicable law and school policies, demonstrates deliberate indifference to the civil rights of the students as well as reckless disregard for students' safety and well-being.

164.    In spite of written policies to the contrary, it was the actual custom, practice, and usage, such that it became the *de facto* policy of the Hopkinton Public Schools, not to investigate

or report instances of suspected child abuse, including but not limited to, sexually harassing behavior of teachers, administrators, or staff.

165.   It was also the actual custom, practice, and usage, such that it became the *de facto* policy of the Hopkinton Public Schools, not to discipline teachers, administrators, or staff for sexually harassing behavior against students or other teachers, administrators, or staff.

166.   It was also the actual custom, practice, and usage, such that it became the *de facto* policy of the Hopkinton Public Schools, not to discipline teachers, administrators, or staff for violations of, or otherwise ensure compliance with, official policies of the Hopkinton Public Schools.

167.   As a direct and proximate result of the Defendants' violations of 42 U.S.C. § 1983, and as alleged in detail above, Jane Doe has suffered personal injuries (including physical and psychological injuries, pain and suffering, emotional distress, impaired earning capacity, medical expenses, and other damages).

## COUNT V
### Violation of 42 U.S.C. § 1983 via Vicarious Liability
### (Against Town of Hopkinton and Hopkinton Public Schools)

168.   Plaintiff repeats the allegations set forth above as if fully contained herein.

169.   As alleged above, the acts of the employees of the Town of Hopkinton and Hopkinton Public Schools, including but not limited to Howard, Dr. Phelan, Dr. Lynch, Mr. Meehan, and Mr. Webster, violated 42 U.S.C. § 1983.

170.   Plaintiff asserts that under the broadest principles of vicarious liability the Town of Hopkinton and Hopkinton Public Schools are legally responsible for all of the acts alleged in this Complaint against their employees (including violation of 42 U.S.C. § 1983), who at all pertinent times were acting as municipal officers within the scope of their employment.

171.    Accordingly, under principles of vicarious liability, as discussed in *Board of Commissioners of Bryan County v. Brown*, 520 U.S. 397, 430-37 (1997) (Breyer, J., dissenting), the Town of Hopkinton and Hopkinton Public Schools are liable for the acts of all employees (including their violations of 42 U.S.C. § 1983), including but not limited to Howard, Dr. Phelan, Dr. Lynch, Mr. Meehan, and Mr. Webster.

172.    As a direct and proximate result of Defendants' violations of 42 U.S.C. § 1983, and as alleged in detail above, Jane Doe has suffered personal injuries (including physical and psychological injuries, pain and suffering, emotional distress, impaired earning capacity, medical expenses, and other damages).

**COUNT VI**
**Negligence**
**(Against Howard)**

173.    Plaintiff repeats the allegations set forth above as if fully contained herein.

174.    Defendant Howard owed Jane a duty to exercise ordinary and reasonable care both within and outside the scope of his employment as a Hopkinton Middle School teacher.

175.    Based on his actions and omissions as alleged above, Defendant Howard repeatedly breached the duty of care that he owed to Jane.

176.    As a direct and proximate result of Howard's negligent acts and omissions, and as alleged in detail above, Jane Doe has suffered personal injuries (including physical and psychological injuries, pain and suffering, emotional distress, impaired earning capacity, medical expenses, and other damages).

**COUNT VII**
**Negligence**
**(Against Town of Hopkinton and Hopkinton Public Schools)**

177.    Plaintiff repeats the allegations set forth above as if fully contained herein.

178.    Plaintiff has fully complied with the requirements of the Massachusetts Tort Claims Act (MTCA) set forth in G.L. c. 258.

179.    The Town of Hopkinton and the Hopkinton Public Schools are "public employers" within the meaning of G.L. c. 258, § 1.

180.    Plaintiff seeks recovery for the negligence of one or more "public employees" who were "acting with the scope of [their] office or employment" within the meaning of G.L. c. 258, §§ 1 and 2.

181.    On December 17, 2013, Plaintiff through counsel presented her claims in writing to the Hopkinton Town Manager, Norman Khumalo, within two years of Jane and Catherine Doe's discovering their injuries and that the injuries were caused by the Defendants, all in compliance with G.L. c. 258, § 4.

182.    The Town of Hopkinton failed to deny Plaintiff's claim in writing within six months after the date upon which it was presented, which is deemed a final denial of Plaintiff's claim under G.L. c. 258, § 4.

183.    The Town of Hopkinton, Hopkinton Public Schools, and its employees and staff, including but not limited to Dr. Phelan, Dr. Lynch, Mr. Meehan, and Mr. Webster, owed Jane a duty to exercise ordinary and reasonable care in the operation of the Hopkinton Middle School.

184.    These duties include, but are not limited to, providing a safe environment for Jane at school; taking all reasonable precautions to protect Jane from injury at school; protecting Jane from physical, emotional, and sexual abuse and harassment at school; immediately terminating any employee found to have engaged in inappropriate conduct with a minor; and properly reporting Jane's abuse to the appropriate government authorities.

185.    Based on their actions and omissions as alleged above, the Town of Hopkinton, the Hopkinton Public Schools, Dr. Phelan, Dr. Lynch, Mr. Meehan, and Mr. Webster repeatedly breached the duty of care that they owed to Jane.

186.    As a direct and proximate result of the Town of Hopkinton's, the Hopkinton Public Schools', Dr. Phelan's, Dr. Lynch's, Mr. Meehan's, and Mr. Webster's negligent acts and omissions, and as alleged in detail above, Jane Doe has suffered personal injuries (including physical and psychological injuries, pain and suffering, emotional distress, impaired earning capacity, medical expenses, and other damages).

## COUNT VIII
### Negligent Hiring, Supervision, Training, and Retention
### (Against Town of Hopkinton and Hopkinton Public Schools)

187.    Plaintiff repeats the allegations set forth above as if fully contained herein.

188.    Plaintiff has fully complied with the requirements of the MTCA set forth in G.L. c. 258.

189.    The Town of Hopkinton and the Hopkinton Public Schools are "public employers" within the meaning of G.L. c. 258, § 1.

190.    Plaintiff seeks recovery for the negligence of one or more "public employees" who were "acting with the scope of [their] office or employment" within the meaning of G.L. c. 258, §§ 1 and 2.

191.    On December 17, 2013, Plaintiff through counsel presented her claims in writing to the Hopkinton Town Manager, Norman Khumalo, within two years of Jane and Catherine Doe's discovering their injuries and that the injuries were caused by the Defendants, all in compliance with G.L. c. 258, § 4.

192.    The Town of Hopkinton failed to deny Plaintiff's claim in writing within six months after the date upon which it was presented, which is deemed a final denial of Plaintiff's claim under G.L. c. 258, § 4.

193.    The Town of Hopkinton, Hopkinton Public Schools, and its employees and staff, including but not limited to Dr. Phelan, Dr. Lynch, Mr. Meehan, and Mr. Webster, owed Jane a duty to exercise ordinary and reasonable care in the operation of the Hopkinton Middle School.

194.    These duties included, but were not limited to, taking all reasonable precautions to ensure that all staff hired to work in the Hopkinton Middle School had the appropriate education and training, experience, skills, character, and background to properly care for children, including Jane; providing all the necessary training to ensure that their officers, supervisors, and staff members were able to identify inappropriate conduct and identify victims of sexual abuse and perpetrators of sexual abuse; that all reasonable steps were taken to supervise the staff hired to work at the Hopkinton Middle School to ensure that they properly effectuated and enforced the Hopkinton Public Schools' policies, procedures, and regulations regarding sexual molestation and abuse; immediately terminating any employee found to have engaged in inappropriate conduct with a minor; and that the care the Hopkinton Middle School staff provided to the children at the school, including Jane, was appropriate and in conformity with applicable laws, regulations, and policies.

195.    The Town of Hopkinton, the Hopkinton Public Schools, and its employees and staff breached their duties to exercise ordinary and reasonable care in hiring, training, supervising, investigating, and retaining staff members, including but not limited to Howard.

196.    As a direct and proximate result of the Town of Hopkinton's and the Hopkinton Public Schools' negligent acts and omissions, and as alleged in detail above, Jane Doe has

suffered personal injuries (including physical and psychological injuries, pain and suffering, emotional distress, impaired earning capacity, medical expenses, and other damages).

## COUNT IX
### Intentional Infliction of Emotional Distress
### (Against Howard)

197.    Plaintiff repeats the allegations set forth above as if fully contained herein.

198.    Based on the acts alleged above, Defendant Howard engaged in conduct intended to inflict emotional distress on Jane, or Howard knew or should have known that emotional distress was the likely result of his conduct.

199.    Howard's actions were extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community.

200.    As a direct and proximate result of Howard's wrongful conduct, and as alleged in detail above, Jane Doe has suffered severe emotional distress of a nature that no reasonable person could be expected to endure and other personal injuries (including physical and psychological injuries, pain and suffering, impaired earning capacity, medical expenses, and other damages).

## COUNT X
### Negligent Infliction of Emotional Distress
### (Against Howard)

201.    Plaintiff repeats the allegations set forth above as if fully contained herein.

202.    As alleged above, Howard committed multiple negligent acts and omissions.

203.    As a direct and proximate result of Howard's negligent acts and omissions, Jane Doe has suffered severe emotional distress resulting in physical harm manifested by objective symptomology.

204.    A reasonable person would have suffered emotional distress under the circumstances to which Jane was exposed.

205.    As a direct and proximate result of Howard's negligent infliction of emotional distress, Jane has suffered personal injuries (including physical and psychological injuries, pain and suffering, emotional distress, impaired earning capacity, medical expenses, and other damages).

## COUNT XI
### Negligent Infliction of Emotional Distress
### (Against Town of Hopkinton and Hopkinton Public Schools)

206.    Plaintiff repeats the allegations set forth above as if fully contained herein.

207.    Plaintiff has fully complied with the requirements of the MTCA set forth in G.L. c. 258.

208.    The Town of Hopkinton and the Hopkinton Public Schools are "public employers" within the meaning of G.L. c. 258, § 1.

209.    Plaintiff seeks recovery for the negligence of one or more "public employees" who were "acting with the scope of [their] office or employment" within the meaning of G.L. c. 258, §§ 1 and 2.

210.    On December 17, 2013, Plaintiff through counsel presented her claims in writing to the Hopkinton Town Manager, Norman Khumalo, within two years of Jane and Catherine Doe's discovering their injuries and that the injuries were caused by the Defendants, all in compliance with G.L. c. 258, § 4.

211.    The Town of Hopkinton failed to deny Plaintiff's claim in writing within six months after the date upon which it was presented, which is deemed a final denial of Plaintiff's claim under G.L. c. 258, § 4.

212.     As alleged above, the Town of Hopkinton, Hopkinton Public Schools, and its employees and staff, including but not limited to Dr. Phelan, Dr. Lynch, Mr. Meehan, and Mr. Webster, committed multiple negligent acts and omissions.

213.     As a direct and proximate result of their negligent acts and omissions, Jane Doe has suffered severe emotional distress resulting in physical harm manifested by objective symptomology.

214.     A reasonable person would have suffered emotional distress under the circumstances to which Jane was exposed.

215.     As a direct and proximate result of the Town of Hopkinton's and Hopkinton Public Schools' negligent infliction of emotional distress, Jane has suffered personal injuries (including physical and psychological injuries, pain and suffering, emotional distress, impaired earning capacity, medical expenses, and other damages).

## COUNT XII
### Violation of the Massachusetts Civil Rights Act (G.L. c. 12, §§ 11H and 11I)
### (Against Howard)

216.     Plaintiff repeats the allegations set forth above as if fully contained herein.

217.     Defendant Howard interfered by threats, intimidation, or coercion, or attempted to interfere by threats, intimidation, or coercion, with Jane's exercise or enjoyment of rights secured by the constitution or laws of the United States or of rights secured by the constitution or laws of the Commonwealth.

218.     Howard's conduct interfered with Jane's exercise or enjoyment of her substantive due process rights to bodily integrity and equal protection under the Fourth, Fifth, Ninth, and Fourteenth Amendments of the Constitution of the United States, and under Articles I, X, and XII of the Massachusetts Declaration of Rights.

219.     Howard's conduct also interfered with Jane's exercise or enjoyment of other Federal and State rights as alleged in this Complaint.

220.     As a direct and proximate result of Howard's violation of the Massachusetts Civil Rights Act, Jane has suffered personal injuries (including physical and psychological injuries, pain and suffering, emotional distress, impaired earning capacity, medical expenses, and other damages).

### COUNT XIII
### Invasion of Right of Privacy (G.L. c. 214, § 1B)
### (Against All Defendants)

221.     Plaintiff repeats the allegations set forth above as if fully contained herein.

222.     Defendants interfered with Jane's right to be free from unreasonable, substantial, or serious interference with her privacy.

223.     As a direct and proximate result of Defendants' violation of G.L. c. 214, § 1B, Jane has suffered personal injuries (including physical and psychological injuries, pain and suffering, emotional distress, impaired earning capacity, medical expenses, and other damages).

### COUNT XIV
### Loss of Consortium (G.L. 231, § 85X)
### (Against All Defendants)

224.     Plaintiff repeats the allegations set forth above as if fully contained herein.

225.     At all relevant times, Jane Doe was a minor child of Catherine Doe.

226.     As alleged in this Complaint, Jane Doe was seriously injured by the Defendants' wrongful conduct.

227.     As alleged in this Complaint, the Defendants are legally responsible for causing Jane's injuries.

29

228. As a result of Jane's injuries caused by the Defendants' wrongful conduct, Catherine Doe sustained a loss of society, companionship, cooperation, aid, affection, and consortium of her daughter Jane Doe, and this deprivation and impairment will necessarily continue into the future.

229. As a direct and proximate result of Defendants' improper conduct, Catherine Doe has suffered damages from the loss of her daughter's consortium, a loss of income, and other damages.

230. Plaintiff brings this action within three years of Jane and Catherine Doe's discovering their injuries and that the injuries were caused by the Defendants.

WHEREFORE, Plaintiff Catherine Doe, individually and as parent and next friend of her minor daughter, Jane Doe, respectfully requests that she be granted the following relief:

A. Issue an order impounding all pleadings and documents filed with the Court revealing Jane and Catherine Doe's identities or actual names;

B. Issue an injunction requiring the Town of Hopkinton, Hopkinton Public Schools, and any and all of its employees to follow and enforce all applicable Federal and State laws and all written policies of the Hopkinton Public Schools;

C. Award to Plaintiff all damages in an amount sufficient to compensate Jane Doe and Catherine Doe for their injuries, including but not limited to physical and psychological injuries, pain and suffering, emotional distress, impaired earning capacity, medical expenses, loss of consortium, loss of income, and other damages;

D. Award to Plaintiff punitive or exemplary damages as permitted by law;

E. Award to Plaintiff her attorneys' fees, costs, and interest as permitted by law; and

F. Grant such further and other relief as may be just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY
ON ALL CLAIMS AND ISSUES SO TRIABLE**

Respectfully submitted,

CATHERINE DOE, individually and as parent
and next friend of her minor daughter,
JANE DOE,

By her attorneys,

David H. Rich (BBO # 634275)
drich@toddweld.com
Joseph M. Cacace (BBO # 672298)
jcacace@toddweld.com
Todd & Weld LLP
One Federal Street, 27th Floor
Boston, MA  02110
T: 617-720-2626
F: 617-227-5777

Dated: July 29, 2014